**Barbara SOUTHERLAND, an individual and Democratic State Central Committee of Michigan, Plaintiffs,**

v.

**Diane FRITZ, City Clerk of the City of Westland, Defendant.**

**No. 96–CV–40392–FL.**

United States District Court, E.D. Michigan, Southern Division.

Nov. 5, 1996.

Mary Ellen Gurewitz, Detroit, MI, for Plaintiffs.

Keith Madden, Westland, MI, for Defendant.

Jeffrey Stuckey, Eric Pelton, Detroit, MI, for Third-Party Intervenor.

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

ROSEN, District Judge.

### I. INTRODUCTION

On November 5, 1996, Plaintiffs Barbara Southerland, a voter, and the Democratic State Central Committee of Michigan moved this Court for a temporary restraining order and/or preliminary injunction pursuant to Fed.R.Civ.P. 65 to enjoin the polls at certain precincts in the City of Westland, Michigan from closing at the set time of 8:00 PM. Defendant Diane Fritz, City Clerk of the City of Westland, opposed the Motion, as did the third-party intervenor, the Michigan Republican Party. The Court considered Plain-

tiffs' Motion, and supporting brief, and oral arguments of counsel at an emergency hearing held on November 5, 1996. This Opinion and Order sets forth the Court's ruling.[1]

## II. FACTUAL AND PROCEDURAL BACKGROUND

On November 5, 1996, the date of national and state elections, the City of Westland began experiencing lengthy delays at Precincts 9, 10, and 28. These delays were apparently caused by the malfunctioning of new polling machines and the fact that the ballot for the election was longer than usual. Plaintiffs sought an emergency temporary restraining order and/or a preliminary injunction to: (1) enjoin the polls from closing at their set 8:00 PM closing time; and (2) allow them to remain open for an additional three hours. Plaintiffs argued that the "excessive" lines and delays at the polls had the effect of disenfranchising voters, including Southerland. Specifically, Plaintiffs alleged that Southerland and other voters' schedules did not allow them the opportunity to wait in line for an extended period of time, nor did their schedules afford them the opportunity to return to the polls numerous times throughout the day before the 8:00 PM closing. Therefore, Plaintiffs contended that the only solution was to require the polling Precincts to remain open past the 8:00 PM closing time.

## III. ANALYSIS

The standard for the grant of a temporary restraining order and/or preliminary injunction consists of a consideration of the following four factors:

1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiffs have shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others; and

4) Whether the public interest would be served by issuing a preliminary injunction.

Fed R. Civ. P. 65; See also, Mason County Medical Ass'n v. Knebel, 563 F.2d 256, 261 (6th Cir.1977).

Plaintiffs argue that the Court has the power to extend the hours during which voting may take place. Defendant counters that Michigan statutory law makes clear the hours during which a polling place will remain open and that these hours may not be changed: "On the day of any election, the polls shall be opened at 7 o'clock in the forenoon, and shall be continuously open until 8 o'clock in the afternoon *and no longer.*" M.C.L.A. § 168.720 (*emphasis* added).

There appears to be little, if any, case law interpreting this statute. However, the Court was provided with two Michigan Attorney General's Opinions which indicate that the hours set forth in the statute are mandatory. In a 1942 opinion, the Michigan Attorney General opined that the legislative body of a city cannot extend the time of the closing of the polls beyond the statutory 8:00 PM closing time. Op.Atty.Gen.1941–42, No.23927, p. 624. This holding is supported by a subsequent opinion by the Attorney General which stated that requiring the polls to remain open from 7 AM to 8 PM is mandatory. Op.Atty.Gen 1952–54, No. 1657, p. 159.

Plaintiffs' argument is that, regardless of the statute, the failure of the polling machines to operate properly provides the Court with the grounds for the requested injunction. In addition to its reliance on the plain language of the statute, Defendant contends that, even if the hours could be extended, such extension is unnecessary. In support of this position, Defendant cites Michigan statutory law which provides remedies to ensure that no voter will be denied his or her right to vote. This statute provides, in pertinent part, that "[e]very qualified elector present and in line at the polls at the hour prescribed for the closing thereof shall be allowed to vote." M.C.L.A. § 168.720.

---

1. The Court ruled on this Motion on the record on November 5, 1996. However, this Opinion was delayed in its release due to the unavailability of the transcript until February 1997.

The Court agrees that this remedy prevents any voter from being denied the right to vote due to lines or delays at the precinct, and that this remedy is exclusive.

Moreover, even in the case of an emergency, another statutory provision sets forth a procedure for creating and administering emergency ballots should any of the polling machines break down and no reserve machines are available. The statute provides:

> If at any time during the election the voting machine is disabled and cannot be repaired and no other voting machine can be had to supply its place, an emergency shall be declared to exist and the voting thereafter at that election in that voting precinct shall be by ballot, in the manner provided in this section. The board or official having the custody of the emergency ballots, when so directed, shall supply a sufficient number of such to the election board for use by the voters. One of the ballots shall be delivered by the election board to each voter who may thereafter appear to vote and shall be voted and counted subject to the provisions relative to voting by ballot at general elections, except as herein otherwise provided. The ballot shall be numbered consecutively from 1 up, which number and identification shall be printed upon a perforated stub as in the case where only regular ballots are used at elections.

M.C.L.A. § 168.782b.

■ The Court finds that the clear import of these statutes, taken together, is that (1) the law mandates the hours and times which polls may be held open in elections in Michigan; (2) those hours are from 7 AM to 8 PM; (3) if there is an emergency affecting poll operation, the law provides an emergency procedure which municipalities must use if they encounter machine breakdowns or other problems; and (4) that this is the only procedure available.[2] For these reasons, therefore, the Court finds that Plaintiffs have not not shown a substantial likelihood of success on the merits.

■ The Court next turns to the consideration of whether Plaintiffs suffered irreparable harm and whether the granting of a preliminary injunction would serve the public interest. Plaintiffs argue that the length of delay at the polling places was, in effect, causing voters to be disenfranchised, and that the loss of the right to vote is an irreparable injury. The only evidence Plaintiffs have shown to support this position, however, is their finding that the number of people who had voted at the time of the hearing was less than half of the number of people who had voted by the same time in 1992. While this may have supported Plaintiffs' position that voters were unable, because of their schedule, to wait in line for this length of time, it may also have been merely indicative of a natural response to the poor weather the area was experiencing on election day, or a host of other reasons.

Thus, the Court finds the argument advanced and the remedy sought by Plaintiffs to be highly speculative on two levels. First, it speculates that people would not wait in line because they were so discouraged and that they would thereby lose their franchise; and, secondly, it speculates that even if the Court were to extend the voting hours, those who were in line earlier and left would come back to vote. The Court, when asked to ignore the mandatory language of a statute and grant an injunction, is precluded from engaging in such speculation.

## IV. CONCLUSION

For the foregoing reasons,

NOW, THEREFORE, Plaintiffs' Motion for a temporary restraining order and/or preliminary injunction is DENIED;

IT IS FURTHER ORDERED that Defendant extend the absentee voting procedure to all affected precincts so as to enable people to vote more quickly.

---

2. At the hearing, Defendant's counsel, in fact, indicated to the Court that this emergency procedure was being implemented at some precincts and having some impact on diminishing the waiting time for people to vote.